## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ZANDOR MARTINEZ,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **EP-24-CV-00145-ATB** |
| **MARTIN O'MALLEY,** *Commissioner of* | § | |
| *Social Security Administration*, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA).  Pursuant to 42 U.S.C. § 405(g), Plaintiff Zandor Martinez,[1] a Social Security benefits claimant, appeals from the final decision of Defendant Leland Dudek[2] (the Acting Commissioner of the SSA) denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and § 1382, *et seq.*  Martinez requests the Court to vacate the Commissioner's decision and remand his claims for further administrative proceedings.  The Commissioner requests the Court to affirm the decision.  For the reasons that follow, the Court finds that the Commissioner's decision should be affirmed.[3]

---

[1] Plaintiff's full name is "Zandor Luis Martinez De Jesus."  Tr. of Admin. R. [hereinafter, cited as "Tr."] at 23, 216, 300.

[2] Dudek is the successor in office to Martin O'Malley, who was initially named as the defendant on Martinez's Complaint (ECF No. 1) filed in April 2024.  In accordance with Federal Rules of Civil Procedure 25(d), Dudek is hereby automatically substituted as a party in this litigation for the previous officeholder.

[3] The parties consented to have the undersigned Magistrate Judge decide the case and enter final judgment.  *See* ECF Nos. 3, 16.

## I.  BACKGROUND

On December 13, 2022, Martinez, then 28 years old, applied for DIB and SSI, alleging that he became disabled as of April 4, 2022, due to asthma, psoriasis with arthritis, urticaria, dermatitis, eczema, gastroesophageal reflux disease, insomnia, depression, and anxiety.[4] Subsequently, Martinez amended his alleged disability onset date to April 6, 2022.[5]  Martinez has a high school education and completed 1 year of college.[6]  Previously, he worked as a construction worker, retail-store customer service representative, and loader/unloader.[7] Between September 2016 and April 2022, Martinez was an infantryman in the U.S. Army; he was medically discharged from the Army.[8]

Martinez's claims for disability benefits were denied initially on February 14, 2023, and upon reconsideration on May 2, 2023.  Thereafter, on May 22, 2023, Martinez requested a hearing before an Administrative Law Judge (ALJ).  On November 6, 2023, ALJ Michelle Lindsay held a hearing; at the hearing, Martinez, who was represented by her attorney, testified, and so did a vocational expert (VE).  On January 16, 2024, ALJ Lindsay issued a written decision denying Martinez's claims.[9]  Martinez then administratively appealed the decision, but

---

[4] Tr. at 216, 261.

[5] *Id.* at 46.

[6] *Id.* at 47–48, 262.

[7] *Id.* at 360.

[8] *Id.* at 47, 50, 230–31, 280, 652.

[9] *Id.* at 20, 23–36.

on March 7, 2024, the Appeals Council denied his request for review;[10] as a result, the ALJ's decision became the final decision of the Commissioner.[11]

On April 29, 2024, Martinez brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  On August 28, 2024, Martinez filed his opening brief**.**  Pl.'s Br., ECF No. 18.  On September 27, 2024, the Commissioner filed a response to Martinez's brief.  Br. in Supp. of Comm'r's Decision at 14 [hereinafter, Def.'s Br.], ECF No. 19.  Martinez did not file a reply.

## II.    THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S FINDINGS AND CONCLUSIONS

Eligibility for SSI on the basis of disability or DIB requires that the claimant be "disabled" within the meaning of the Social Security Act.  42 U.S.C. §§ 423(a)(1)(E), 1382(a).[12] The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).  "A claimant has the burden of proving he suffers from a disability."  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets

[10] *Id.* at 7, 212–13.

[11] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

[12] *See also Lyon v. Bowen*, 802 F.2d 794, 796 (5th Cir. 1986) ("To be eligible for SSI an individual must be aged, blind, or disabled as defined in 42 U.S.C. § 1382c and have income and resources below the levels specified in 42 U.S.C. § 1382a.").

or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[13]  "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if he gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).  A determination at any step that the claimant is disabled or is not disabled "ends the inquiry."  *Id*.

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Kneeland*, 850 F.3d at 754.  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* (brackets omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  "The RFC is used in both step four and step five to determine whether the claimant is able to do [his] past work or other available work."  *Kneeland*, 850 F.3d at 754.

Here, ALJ Lindsay evaluated Martinez's claims under the above-mentioned five-step sequential evaluation process.  As a threshold matter for Martinez's DIB claim, the ALJ found that his last-date-insured is December 31, 2027.  Tr. at 26.  At step one, the ALJ found that Martinez had not engaged in substantial gainful activity since April 6, 2022, his alleged disability

---

[13] "'The relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI].'"  *Undheim v. Barnhart*, 214 F. App'x 448, 449 n.1 (5th Cir. 2007) (quoting *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985)).  Part 404 of 20 C.F.R. relates to DIB, *see* 20 C.F.R. § 404.1, whereas Part 416 relates to SSI, *see* 20 C.F.R. § 416.101.  As relevant here, the regulations are not materially different; so, hereinafter, the Court may cite to Parts 404 and 416 interchangeably.  *See Sun v. Colvin*, 793 F.3d 502, 506 n.1 (5th Cir. 2015).

onset date as amended.  *Id.*  At step two, the ALJ found that Martinez had the following severe impairments: asthma; psoriatic arthritis; major depressive disorder; anxiety disorder; and adjustment disorder.  *Id.*

At step three, the ALJ found that Martinez's impairments, alone or in combination, did not meet or equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (the Listing of Impairments) that lead to automatic findings of disability.  Tr. at 26.  Specifically, she determined that Martinez's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04 (depressive disorders) and 12.06 (anxiety disorders).  *Id.* at 27.  In making that determination, the ALJ utilized the Agency's psychiatric-review technique (PRT) described in 20 C.F.R. §§ 404.1520a and 416.920a.  Applying the PRT, the ALJ rated as "moderate" Martinez's mental limitations in four broad functional areas (also known as, the Paragraph B functional criteria)—"understand, remember, or apply information"; "interact with others"; "concentrate, persist, or maintain pace"; and "adapt or manage oneself."  *Id.* at 27–28.

Next, before going to step four, the ALJ determined Martinez retained the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with some additional exertional and non-exertional limitations.  Tr. at 29.  Specifically, in her RFC formulation, the ALJ incorporated the following mental limitations:

> [Martinez] is able to understand and remember detailed, but not complex, instructions.  He is able to maintain attention and concentration to perform and persist at only simple tasks at a consistent pace for two hours at a time without requiring redirection to task.  In addition, [he] can have occasional interaction with the general public and superficial interaction with coworkers and supervisors.  Finally, he requires work involving no more than occasional change in the routine work setting.

*Id.*

At step four, the ALJ found, based upon the VE's testimony, that Martinez could not perform his past relevant work as an infantry crewmember, which is a semi-skilled job with a Specific Vocational Preparation rating of 3, and a "very heavy" job as Martinez actually performed. Tr. at 33, 65. At step five, the ALJ found, again based upon the vocational expert's testimony, that given Martinez's age, education, work experience, and RFC, he could work as a folder, mail clerk, and sorter, and that these jobs existed in significant numbers in the national economy. *Id*. at 34–35. The ALJ concluded that Martinez was not disabled under the Act and therefore, was not entitled to disability benefits. *Id.* at 20, 35–36.

## III.   STANDARDS FOR JUDICIAL REVIEW

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying social security benefits is "highly deferential." *Garcia*, 880 F.3d at 704. Courts review the Commissioner's decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted).

Substantial evidence is "more than a mere scintilla," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), but "less than a preponderance of the evidence," *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotes omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

In reviewing the Commissioner's decision, "the court scrutinizes the record to determine whether [substantial] evidence is present." *Sun*, 793 F.3d at 508. It however may not "try the issues *de novo*" or "reweigh the evidence," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508.

## IV. DISCUSSION

Martinez assigns a single two-part error to ALJ Lindsay's written decision. Specifically, he claims that the ALJ erred as a matter of law by failing to build an "accurate and logical bridge" between the evidence and two specific sets of mental limitations that she incorporated in her RFC formulation: (1) the social interaction limitations and (2) the "attention and concentration" limitations. Pl.'s Br. at 4, 7–8.

An ALJ is charged with determining a claimant's RFC. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012).[14] The ALJ makes that determination "'by combining a medical assessment of [the claimant]'s impairments with descriptions by physicians, the [claimant], or others of any limitations on the [claimant]'s ability to work.'" *Bayer v. Colvin*, 557 F. App'x 280, 288 (5th Cir. 2014) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988)). In making that determination, the ALJ must consider "all . . . relevant medical and other evidence" in the record, including any medical source's "statements about what [the claimant] can still do" and the claimant's and his family member's "descriptions and

---

[14] *See also McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) ("[T]he ALJ's RFC assessment is an administrative, rather than a medical, determination.").

observations of [his] limitations from [his] impairment(s)."  20 C.F.R. § 404.1545(a)(3).  In

particular, regarding the claimant's mental RFC, the ALJ must assess his abilities to carry out

certain mental activities "in a work setting" such as "understanding, remembering, and carrying

out instructions" and "responding appropriately to supervision, co-workers, and work pressures."

20 C.F.R. § 404.1545(c).[15]

The Fifth Circuit has long rejected the notion that an ALJ must "follow formalistic rules"

when articulating the reasons for her determinations.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th

Cir. 1994).  It has also explained that a conclusory determination, without any discussion of the

pertinent evidence and "any explanation as to how [the ALJ] reached the [determination]," is

"beyond meaningful judicial review."  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  In an

unpublished opinion, the Fifth Circuit has added that while "[t]he ALJ does not need to comment

on every piece of evidence," she "must build an *accurate and logical bridge* between the

evidence and the final determination."  *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)

(emphasis added).[16]  "[I]n conducting [judicial] review" of the ALJ's reasoning and explanations

for her findings, "common sense, not technical perfection, is our guide."  *Keyes-Zachary v.*

---

[15] *See also Anderson v. Colvin*, 514 F. App'x 756, 763 (10th Cir. 2013) ("As part of the RFC
assessment, the ALJ must consider the claimant's work-related mental limitations, such as the 'ability to:
understand, carry out, and remember instructions; use judgment in making work-related decisions;
respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine
work setting.'" (brackets omitted) (quoting SSR 96-8p, 1996 WL 374184, at *6 (SSA July 2, 1996))).

[16] As this Court has observed on another occasion, in announcing the "logical bridge"
requirement, the *Price* court looked to the Seventh Circuit case law.  *Venegas v. O'Malley*, No. EP-24-
CV-00001-KC-ATB, 2024 WL 5182647, at *4 & n.11 (W.D. Tex. Dec. 13, 2024), *R & R adopted*, 2025
WL 28660 (W.D. Tex. Jan. 3, 2025).  Under the Seventh Circuit case law, ALJs must "provide an
explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing
court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial
review."  *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (cleaned up).  "At times," the Seventh
Circuit has "put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the
evidence to his conclusion.'"  *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

*Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required.").  After all, "social-security adjudicators are subject to only the most minimal of articulation requirements."  *Thorlton v. King*, 127 F.4th 1078, 1083 (7th Cir. 2025) (internal quotes omitted).

## A.  Social Interaction Limitations

In her RFC formulation, the ALJ limited Martinez to "*occasional* interaction with the general public and *superficial* interaction with coworkers and supervisors."  Tr. at 29 (emphasis added).  Martinez claims that the ALJ did not provide any logical bridge between the evidence and these limitations.  Pl.'s Br. at 10–11.

Specifically, Martinez posits that a limitation to "occasional contact" is a *quantitative* limitation related to the quantity of time the social interactions take place, whereas a limitation to "superficial contact" is a *qualitative* limitation relating to the quality of the social interactions. Pl.'s Br. at 8.  Martinez contends that there is no explanation in the ALJ's decision as to why she decided that Martinez was limited to a quantitative, but not a qualitative, limitation in interactions with the general public and to a qualitative, but not a quantitative, limitation in interactions with coworkers and supervisors.  *Id.* at 9.  He insists that there is nothing in the record to support an RFC with dichotomous social limitations or a distinction between Martinez's ability to interact with the general public and his ability to interact with coworkers and supervisors.  *Id.* at 10.

In response, the Commissioner points out that at the administrative hearing, neither Martinez, nor his counsel, disputed the ALJ's quantitative-qualitative descriptions of the RFC and argues that Martinez should not now be heard to argue that the ALJ erred in formulating his RFC.  Def.'s Br. at 7.  Recounting the ALJ's discussion of the pertinent evidence, the

Commissioner argues that the ALJ fully explained the bases of her RFC assessment, forming a logical bridge between the evidence and her ultimate decision. *Id.* at 11; *see also id.* at 7–8, 10–11, 13–14 (recounting the ALJ's discussion). The Commissioner adds that substantial evidence supports the ALJ's RFC assessment and final decision. *Id.* at 6.

As an initial matter, the Court addresses what the ALJ might have meant by the words "occasional" and "superficial" in her formulation of Martinez's social interaction limitations. *Cf. Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *2 (7th Cir. Oct. 11, 2022) (unpublished) (ALJ defining "brief and superficial interactions with others" as "occasional interaction with supervisors apart from what is necessary for general instruction, task completion, or training, and occasional interaction with co-workers and the general public"). For the proposition that "occasional" interaction suggests a quantitative limitation and "superficial" interaction suggests a qualitative limitation, Martinez relies on *Wartak v. Colvin*, No. 2:14-CV-401-PRC, 2016 WL 880945 (N.D. Ind. Mar. 8, 2016). In *Wartak*, the court stated: "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Id.* at *7. In addressing a similar argument premised upon *Wartak*, the Seventh Circuit distinguished *Wartak*, explaining that "*Wartak* does not cite case law or regulations in support of this distinction, and in any event, *Wartak* is merely persuasive authority in this court." *Reynolds v. Kijakazi*, 25 F.4th 470, 474–75, 475 n.3 (7th Cir. 2022). In *Julin v. Colvin*, 826 F.3d 1082 (8th Cir. 2016), addressing an argument directed to the ALJ's use of the terms "occasional" and "superficial" in the RFC, the Eighth Circuit observed that there was no indication that the ALJ or the VE in that case understood the terms "to carry more than [their] everyday meaning," *id.* at 1089–90. Other cases seem to suggest that there may be some overlap between "occasional" and "superficial" limitations in interaction with others. *See, e.g.*, *Lambert v.*

*Kijakazi*, No. 19-35360, 2022 WL 1537359, at *1 (9th Cir. May 16, 2022) (unpublished) (concluding "[i]n limiting [claimant] to 'superficial interaction with coworkers and the public,' the RFC reasonably translated a limitation that the agency psychologists described as permitting 'occasional and brief contact with the public or co-workers'" (cleaned up)).

And it is not uncommon for ALJs to formulate an RFC that is identical or similar to ALJ Lindsay's dichotomous formulation.  *See, e.g.*, *Trujillo v. Comm'r, SSA,* 818 F. App'x 835, 838–39 (10th Cir. 2020) (noting ALJ found that claimant had the RFC "to perform light work . . . except she . . . can have occasional contact with the general public[] and[] can have superficial interactions with coworkers and supervisors"); *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *2 (9th Cir. July 5, 2023) (unpublished) (noting ALJ held that claimant "can have brief, superficial interaction with co-workers and the public[] and can have occasional interaction with supervisors"); *Lawson v. Colvin*, 807 F.3d 962, 964 (8th Cir. 2015) (noting ALJ found that claimant had the RFC "to perform other work if a job involved limited or no interaction with the general public and superficial contact with co-workers and supervisors").  But as the Commissioner points out, at the hearing before the ALJ, Martinez's counsel did not press for clarifications about the terms "occasional" and "superficial," when the ALJ posed a hypothetical based on her RFC formulation to the VE, nor did counsel ask the VE to explain what the VE understood the terms to mean.  *See* Tr. at 65–68 (hearing transcript).[17]  Like the Eighth Circuit in

---

[17] *Cf., e.g.*, *Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) ("[E]ven assuming, *arguendo*, that the administrative law judge's hypothetical was deficient in the respects urged on appeal, because [the claimant's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error."); *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005) (holding that substantial evidence supported the ALJ's determination that claimant had the RFC to perform sedentary work because "[t]he VE testified that there were numerous jobs in the national economy that [the claimant] could perform, but [his] attorney neither cross-examined the VE nor provided any contrary evidence"); *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 648–50 (10th Cir. 2020) (rejecting argument that ALJ's finding on an issue was erroneous, reasoning in part that the claimant's "counsel could have asked," but did not ask, "additional questions at the hearing to clarify such issues").

*Julin*, the Court finds that there is no indication here that the ALJ or the VE understood the terms to carry more than their everyday meaning.  *See* New Oxford American Dictionary at 1212 (3d ed. 2010) (defining "occasional" as "occurring . . . or done infrequently and irregularly"); *id.* at 1745 (defining "superficial" as "not thorough, deep, . . . ; cursory").

The ALJ's decision reflects that in forming Martinez's mental RFC, she considered and weighed the relevant evidence in the record.  Specifically, throughout her written decision, the ALJ expressly discussed Martinez's hearing testimony, Tr. at 30, his statements in a Function Report that he submitted, *id.* at 27–28 (citing Ex. 7E); *id.* at 30 (same); *id.* at 33–34 (same), his uncle's statements in a Third-Party Function Report that the uncle submitted, *id.* at 32–33, the findings of State agency psychological consultants Byron T. Pack, Psy.D., and Henry Hanna, Ph.D., *id.* at 32–33 (citing Exs. 3A, 4A, 6A, and 7A), and medical evidence in, among other medical records, treatment notes from psychiatric and mental health care clinics, *e.g.*, *id.* at 32 (recounting that "[d]iagnoses were noted as unspecified anxiety disorder and major depressive disorder" (citing Ex. 7F at 3 (a psychiatric-mental health nurse practitioner's notes from Martinez's therapy session in June 2022))).

A recap of some of the ALJ's discussion and analyses follows.  The ALJ evaluated and found mostly persuasive Dr. Pack's and Dr. Hanna's findings about Martinez's mental abilities, though she disagreed with them in two respects that are relevant here.  Whereas the consultants rated Martinez's limitation in the "interact with others" functional area (a PRT evaluation) as "none" to "mild," the ALJ rated it as "moderate," and whereas the consultants did not include any social interaction limitations in their RFC assessments, the ALJ did.  *Compare* Tr. at 75, 77, 93, 96, *with id.* at 27, 29.  The ALJ recounted Martinez's statement in his Function Report that he "has problems getting along with family, friends, neighbors, and others," but juxtaposed that

against his other statements in the same report, writing "he also reported that he does not need someone to accompany him when he goes out and spends time with others on the phone and by texting. Tr. at 27 (citing Tr. at 306).  The ALJ discussed treatment notes from a therapy session on June 29, 2022, and noted that while Martinez complained of depression, anxiety, irritability, isolation, and feelings of hopelessness, an examination performed on that day was normal with cooperativeness, normal mood, normal affect, and normal thought content. *Id.* at 31 (citing Tr. at 898).  Reviewing treatment notes from another therapy session on February 21, 2023, the ALJ noted that while Martinez stated that he had a little bit of anxiety, an examination was completely normal on this date with cooperativeness, normal psychomotor activity, normal mood, normal affect, and no suicidal or homicidal ideations. *Id.* at 32 (citing Tr. at 2155).

At the conclusion of her discussion of the evidence, the ALJ wrote that her RFC assessment is supported by the objective medical evidence of record and "the numerous activities of daily living" that Martinez reported he engages in, including "driving a car," "shopping by phone and by computer," "spending time with others on the phone and by texting," "not needing someone to accompany him when he goes out," and "having never been fired or laid off from a job due to problems getting along with others." *Id.* at 33–34 (citing Martinez's Function Report).

Martinez is correct to point out that the ALJ did not explain why she determined that Martinez can have "occasional" interaction with the general public but "superficial" interaction with coworkers and supervisors; however, Martinez is incorrect to say that there is nothing in the record to support the distinction that the ALJ drew.  Indeed, the Court's review of the record reveals that it contains sufficient evidence that supports the distinction; several pieces of this evidence are mentioned in the ALJ's decision and others, not.

The following evidence is pertinent to Martinez's ability to interact with others. Martinez stated in his Function Report that he has problems getting along with family, friends, neighbors, and others, Tr. at 306, and as discussed above, the ALJ mentioned this statement in her decision, *id.* at 27. In that report, Martinez also stated that he is "not sociable," he is "not comfortable with [him]self," and he "prefer[s] to be alone," *id.* at 306, and though the ALJ did not mention these statements, she noted that Martinez reported "living alone," *id.* 33–34. At the hearing, Martinez testified that he does not "like to be around people that much," *id.* at 57, which the ALJ mentioned in her decision, *id.* at 30. As the ALJ noted, Martinez also stated in his Function Report that he spends time with others on the phone and via texting. *Id*. at 27 (citing Tr. at 306). Further, in the Third-Party Function Report, Martinez's uncle stated that Martinez spends time with others in person, on the phone, through emails, and via texting, *id.* at 318, and that he shops in stores, *id.* at 317—which the ALJ did not mention, though she recounted from the same report that Martinez has difficulty with "getting along with others," *id.* at 32 (citing Tr. at 319).

In contrast, as pertinent to Martinez's ability to interact with supervisors and coworkers, Martinez—in response to the question asking how well he gets along with "authority figures," such as "police, bosses, landlords or teachers"—conditionally stated that "[i]t depends [on] how they treat [him] first." Tr. at 307. Martinez's response suggests that any limitations that he may have in interacting with bosses or supervisors depend on the nature of the interaction—that is, such limitations are, in Martinez's chosen words, "qualitative." Further, in response to the same question in the Third-Party Function Report, Martinez's uncle answered, "good." *Id.* at 320. Dr. Pack and Dr. Hanna each opined that Martinez's ability to sustain an ordinary routine without special supervision is not significantly limited. *Id.* at 77, 95. Moreover, in his Function Report,

Martinez stated, as the ALJ recounted, that he was never fired or laid off from a job due to problems getting along with others, *id.* at 34, 307.

To be sure, in her decision, the ALJ did not mention each and every statement or opinion just mentioned above, but the ALJ did discuss at length other pieces of evidence from the sources of these statements and opinions—to wit, his Function Report, the Third-Party Function Report, and the Disability Determination Explanations (DDEs) completed by the psychological consultants. The Court is confident that the ALJ considered the unmentioned statements and opinions. *Cf. Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."). The Court therefore finds that the ALJ's discussion and analyses, in view of the statements or opinions just mentioned above, provide sufficient basis for a "meaningful judicial review," *Audler*, 501 F.3d at 448, and therefore, provide "an accurate and logical bridge," *Price*, 401 F. App'x at 986, between the evidence and the ALJ's RFC assessment that Martinez can have occasional interaction with the general public and superficial interaction with coworkers and supervisors, Tr. at 29. Moreover, Martinez fails to point to any medical opinion of record that contradicts the ALJ's assessment. *Cf. Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023) (concluding that ALJ met the "logical bridge" standard in part because claimant "did not provide any opinion from a doctor who would have imposed greater restrictions than those the ALJ found in his decision" and stating that "[t]he lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal"). The ALJ did not err.

Finally, and alternatively, the Court finds that even if the ALJ erred by failing to build an accurate and logical bridge, the error was harmless. An error in failing to build an accurate and

logical bridge "is subject to harmless-error review," and the court "will not remand a case to the ALJ for further explanation if [it] can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013); *cf. also Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (unpublished) (The doctrine of harmless error applies to an ALJ's failure to explain how she considered the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(b)(2).).[18]  "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556.  The burden is on the plaintiff to show that the ALJ's error was harmful. *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012); *Miller*, 2023 WL 234773, at *4.

Here, to show that the ALJ's supposed error was harmful, Martinez references the SSA's Program Operations Manual System ("POMS") DI 25020.010,[19] which provides guidance and instructions on how to complete Form SSA-4734-F4-SUP,[20] a special form for use by psychological consultants, such as Dr. Pack and Dr. Hanna, to document their mental RFC decisions.  Specifically, Martinez points out that POMS DI 25020.010 states that the ability to

---

[18] *See also Miller*, 2023 WL 234773, at *4 (faulting the plaintiff there for "misunderstand[ing] her burden," explaining that the ALJ's error in that case "was that she did not provide sufficient explanation of her consideration of the medical opinions" but that the plaintiff "fail[ed] to show that if the ALJ had given further explanation, then she would have adopted them").

[19] *See* https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last visited Mar. 25, 2025).

[20] A copy of Form SSA-4734-F4-SUP is available at the following URL address: http://www.reginfo.gov/public/do/PRAViewIC?ref_nbr=200701-0960-005&icID=9288 (last visited Mar. 25, 2025).  Form SSA-4734-F4-SUP "is no longer in use"; instead, "agency consultants now use the electronic Claims Analysis Tool ('eCAT'), and their assessments are included as the ["Mental Residual Functional Capacity"] portion of the DDE." *Romero v. Kijakazi*, No. CV 21-249 KK, 2022 WL 1553295, at *10 n.11 (D.N.M. May 17, 2022); *see also Dunn v. O'Malley*, No. 23-55707, 2024 WL 3439583, at *2 (9th Cir. July 17, 2024) (unpublished) (observing that the state agency doctors in that case did not use Form SSA-4734-F4-SUP, but instead used a DDE "that is identical in substance to Special Form SSA-4734-F4-SUP but different in form").

accept instructions and respond appropriately to criticism from supervisors and the ability to get along with coworkers and peers without (unduly) distracting them or exhibiting behavioral extremes are "critical" for performing "unskilled" work.  Pl.'s Br. at 11 (citing POMS DI 25020.010(B)(3)(k)–(l)).  The record however does not contain any Form SSA-4734-F4-SUP, and Martinez fails to point to any medical opinion regarding these abilities.  Dr. Pack and Dr. Hanna, who completed DDEs, *see* note 20, *supra*, found that Martinez had no social interaction limitations and therefore, did not rate these abilities.  Tr. at 77, 95.  Absent a medical opinion, Martinez's POMS-based argument is beside the point.[21]

Moreover, stringing together various pieces of evidence, Martinez argues that the record supports a need for an RFC limitation with a "similar level" of interaction, be it a quantitative or qualitative interaction, with all categories of persons, *i.e.*, the public, coworkers, and supervisors. *Id.* at 9–10.  His argument seems to be that if his claims are remanded for the ALJ's failure to explain why she "formulated an RFC with dichotomous social interactions," the ALJ would, on remand, include social interaction limitations at a "similar level."  *Id.* at 10–11.  Far from it.  The cited evidence consists of Martinez's statements in his Function Report and his subjective reports in several medical records.[22]  Some of these statements and reports were expressly discussed in

---

[21] Martinez also points out that POMS DI 25020.010 states that the ability to work in coordination with or proximity to others without being (unduly) distracted by them is critical for performing unskilled work.  Pl.'s Br. at 11 (citing POMS DI 25020.010(B)(g)).  In their respective DDEs, under the "Sustained Concentration and Persistence Limitation" section, Dr. Pack and Dr. Hanna rated Martinez's ability to do so as "not significantly limited."  Tr. at 77, 95.  These ratings, which the Court discussed above, actually support the ALJ's RFC assessment, so, they do not show any prejudice.

[22] In one respect, Martinez mischaracterizes a notation in the medical records.  Specifically, he says that medical records also indicate that he has "'increased mood dysregulation' and 'aggressive behavior'"  Pl.'s Br. at 9 (quoting Tr. at 745).  The pin-cited page is a part of treatment notes from a therapy session on October 18, 2022.  At the end of the notes, under the heading "Next Appointment," the following is stated:

> *As always with any medication changes*, we will need to monitor the patient closely at their follow up appointments. In particular, we need to address for any new or *increased mood*

the ALJ's decision, and the remaining ones are cumulative of other evidence that the ALJ discussed. *Id.* at 9. Moreover, as discussed above, the record contains sufficient evidence that supports the ALJ's determination that Martinez can have occasional interaction with the general public and superficial interaction with coworkers and supervisors. Consequently, remand for a more fulsome explanation would be futile.

That futility is additionally predicted by the Dictionary of Occupational Titles' (DOT) descriptions of the jobs—namely, folder, mail clerk, and sorter—that, the ALJ found at step five, Martinez could perform consistent with the RFC. Tr. at 35. "Each job listed in the DOT is described by reference to various components. One component of the DOT occupational code is 'Worker Functions.' The worker function labeled 'People' expresses the degree of interaction with other people that the job requires." *Duncan v. Colvin*, 608 F. App'x 566, 577 (10th Cir. 2015) (cleaned up) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005)). According to the DOT, all three jobs that the ALJ identified have a People rating of 8. Dep't of Labor, DOT § 369.687-018 (folder), 1991 WL 673072 (4th ed. 1991); *id.* § 209.687-026 (mail clerk), 1991 WL 671813; *id.* § 361.687-014 (sorter), 1991 WL 672991. A People rating of 8 indicates that the jobs require "[a]ttending to the work assignment instructions or orders of supervisor," but "[n]o immediate response [is] required unless clarification of instructions or orders is needed." Dep't of Labor, DOT, App. B, *Explanation of Data, People, and Things*,

---

> *dysregulation*, anxiety, *aggressive behavior*, psychotic symptoms, and/or suicidal ideations which can occur with changes in this medication and place the patient at risk of death/aggressive or assaultive behavior, which can all lead to psychiatric hospitalization.

Tr. at 745 (emphasis added). This statement is neither a subjective report that Martinez made during the session, nor a diagnostic statement made by the notes' author. Instead, it is a standard notation for follow-up appointments whenever "any medication changes" occur, and the same notation appears in treatment notes from multiple other therapy sessions. *See, e.g.*, *id.* at 749, 754, 914, 918, 923.

1991 WL 688701 (4th ed. 1991). The three jobs also have a "N - Not Significant" People rating. *E.g.*, DOT § 369.687-018 (folder), 1991 WL 673072, meaning that these jobs require "very little interaction" with the public, coworkers, and supervisors, *cf. Lueras v. Comm'r, SSA*, No. 21-2043, 2022 WL 244142, at *3 (10th Cir. Jan. 27, 2022) (unpublished), *aff'g Lueras v. Saul*, No. CV 19-1069 GJF, 2021 WL 698659, at *7 (D.N.M. Feb. 23, 2021) (stating the jobs relied on by the ALJ at step five, which have a People rating of 8 and a "N - Not Significant" People rating, "do not require significant people skills," nor do they "demand[] significant interaction with supervisors nor contact with coworkers" (citing DOT § 207.685-014, 1991 WL 671745, and *id.* § 209.587-034, 1991 WL 671802)). Consequently, even if the ALJ were to limit Martinez to a "similar level" of social interaction with all categories of persons, as Martinez proposes,[23] the ALJ's step-five determination would remain unchanged.

In sum, Martinez's assignment of error as to the ALJ's formulation of Martinez's social interaction limitations is without merit.

## B. Attention and Concentration Limitations

The ALJ's RFC formulation states, as relevant here, that Martinez "is able to understand and remember detailed, but not complex, instructions," and that he "is able to maintain attention and concentration to perform and persist at *only simple tasks* at a consistent pace for two hours at a time without requiring redirection to task." Tr. at 29 (emphasis added).

Martinez takes exception to the "simple tasks" limitation. He argues that the ALJ failed to provide any explanation as to why the simple tasks limitation was considered sufficient. Pl.'s

---

[23] *See* Pl.'s Br. at 10 ("[I]f qualitative social limitations were warranted, then there should have been qualitative limitations (such as superficial contact) applied to coworkers, supervisors and the general public. Likewise, if quantitative social limitations were warranted, then there should have been quantitative limitations (such as occasional contact) applied to coworkers, supervisors and the general public as well.").

Br. at 7.  He also argues that the ALJ failed to provide any explanation as to why a more significant limitation—such as a limitation to performing simple 1-2 step tasks or a limitation to receiving or understanding 1-2 step instructions—was not warranted.  *Id.*; *see also id.* (arguing that question remains as to why the RFC assessed was not even more limiting).

Recounting the ALJ's discussion from her decision, the Commissioner responds that the ALJ fully explained her RFC assessment in this regard.  Def.'s Br. at 6.  The Commissioner adds that the ALJ was not required to explain why she did not formulate a different RFC.  *Id.*  The Court agrees.

Here too, the ALJ's decision reflects that she considered and weighed the pertinent evidence in the record, including Martinez's statements in his Function Report and at the hearing, the administrative findings of Dr. Pack and Dr. Hanna, and medical evidence.  *See, e.g.*, Tr. at 30–33.  For example, the ALJ noted that in his Function Report, Martinez stated that he has problems concentrating, understanding, and completing tasks, but he also stated that he pays bills, uses a checkbook, handles a savings account, counts change, watches television, plays video games, and drives a car.  *Id.* at 28, 30.  The ALJ noted that on several mental status examinations performed between October 2022 and June 2023, Martinez was fully alert and oriented to person, place, and time, and displayed intact attention, intact concentration, normal thought content, intact insight, intact judgment, excellent fund of knowledge, and intact recent and remote memory.  *Id.* at 28 (citing Tr. at 898, 2122, 2152, 2219); *see also id.* at 33.  The ALJ evaluated Dr. Pack's and Dr. Hanna's identical RFC assessment that Martinez "can understand, remember, and carry out detailed, but not complex, instructions," *id.* at 77, 95, and the ALJ found that assessment to be persuasive, *id.* at 33.  Moreover, the ALJ determined, in her PRT analysis at step three, that Martinez has "moderate" limitation in the "concentrate, persist, or

maintain pace" functional area, *id.* at 28, and she stated that her RFC assessment reflects this determination, *id.* ("[T]he following [RFC] assessment reflects the degree of limitation the undersigned has found in the paragraph B mental function analysis.").

The Court therefore finds that the ALJ provided more than sufficient explanation for why the record evidence led her to limit Martinez to "simple tasks" in her RFC formulation. That finding is bolstered by two additional observations. First, courts have held that an RFC limitation to "simple tasks" adequately accounts for "moderate" limitation in the "concentrate, persist, or maintain pace" area, which, recall, the ALJ determined. *See, e.g.*, *Suzan R. v. O'Malley*, No. EP-23-CV-00288-KC-RFC, 2024 WL 3169606, at *4 (W.D. Tex. June 20, 2024) (collecting cases), *R & R adopted*, 2024 WL 3404646 (W.D. Tex. July 10, 2024); *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 213 (3d Cir. 2019) ("'[C]oncentration, persistence, or pace' is tightly linked to the capacity to complete 'simple tasks.'").[24]

Second, an RFC limitation to "simple tasks," as the ALJ determined, is consistent with an RFC limitation to "understand, remember, and carry out detailed, but not complex, instructions," as Dr. Pack and Dr. Hanna determined, insofar as both limitations accommodate jobs requiring a General Educational Development (GED) Reasoning Level 2 under the DOT.[25] *Compare, e.g.*, *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (Courts "have

---

[24] *See also, e.g.*, *Dunson v. Berryhill*, No. 7:17-CV-1-BP, 2018 WL 1427107, at *6 (N.D. Tex. Mar. 22, 2018) (restricting claimant to "simple tasks" reasonably incorporated moderate limitation in concentration, persistence, and pace).

[25] "The DOT describes the requirements for each listed occupation, including the necessary [GED] levels: that is, 'aspects of education (formal and informal) required of the worker for satisfactory job performance.'" *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (ellipses omitted) (quoting Dep't of Labor, DOT, App. C, *Components of the Definition Trailer*, 1991 WL 688702 (4th ed. 1991)). "The GED levels include[] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* Here, two of the three jobs that the ALJ identified at step five, namely, folder and sorter, require a GED Reasoning Level 2. *See* DOT § 369.687-018 (folder), 1991 WL 673072; *id.* § 361.687-014 (sorter), 1991 WL 672991.

concluded that an RFC limitation to 'simple' . . . tasks is consistent with Level Two reasoning." (collecting cases, including *Abrew v. Astrue*, 303 F. App'x 567, 569–70 (9th Cir. 2008)), *with, e.g.*, *Gee v. Saul*, No. 5:19-CV-00408-JKP-RBF, 2020 WL 6588398, at *5–*6 (W.D. Tex. Aug. 17, 2020) (An RFC assessment that the claimant has the "ability to understand, remember, and carry out detailed but not complex instruction[s]" is consistent with Reasoning Level 2.), *R & R adopted*, 2020 WL 5558089 (W.D. Tex. Sept. 17, 2020).[26]

Finally, as for Martinez's other argument that the ALJ failed to explain why a more limiting RFC was not assessed, Martinez fails to point to any medical evidence, much less any medical opinion evidence, that supports an RFC limitation to performing simple 1-2 step tasks or a limitation to receiving or understanding 1-2 step instructions. Absent evidence, it is illogical to assume that the ALJ had a duty to explain why such limitations need not be incorporated in the RFC. *See Tutwiler*, 87 F.4th at 859–60, *supra*; *cf. also Rice v. Barnhart*, 384 F.3d 363, 370–71 (7th Cir. 2004) (An ALJ does not err in assigning an RFC limitation if "there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."). So, the Court rejects it.

In sum, the ALJ built an accurate and logical bridge between the record evidence and her RFC assessment that Martinez is limited to "simple tasks." There was no error in this regard.

---

[26] *See also Vanessa R. v. Comm'r of Soc. Sec.*, No. 3:18-CV-5719 JLR-JRC, 2019 WL 1586867, at *3 (W.D. Wash. Mar. 28, 2019) (An RFC assessment that the claimant has "the ability to carry out detailed, but not complex, instructions" is consistent with Reasoning Level 2.), *R & R adopted*, 2019 WL 1584222 (W.D. Wash. Apr. 12, 2019); *Urias v. Berryhill*, No. CV 16-1063 KBM, 2017 WL 3025926, at *9 (D.N.M. July 11, 2017) (An RFC assessment the claimant can "understand, remember, and carry out detailed but not complex instructions . . . more closely matches the requirements of level 2 reasoning than levels 3 and 4.").

## V.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision is

**AFFIRMED**.

**So ORDERED and SIGNED this  25th  day of March 2025.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**